UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
AT LONDON

CIVIL ACTION NO. 14-139-DLB-HAI

ARIZONA WILSON, AS ADMINISTRATOR OF THE ESTATE
OF LEO MICHAEL COX, INC.                                    PLAINTIFF


vs.                        MEMORANDUM OPINION AND ORDER


HIRSCHBACH MOTOR LINES, INC., ET AL                    DEFENDANTS

***   ***   ***   ***

Plaintiff Arizona Wilson is suing for negligence on behalf of the Estate of Leo Michael

Cox, who died on August 10, 2013, as a result of being run over by a semi-truck.  One of

the two defendants, Hirschbach Motor Lines, Inc. ("Hirschbach"), now moves to dismiss for

lack of personal jurisdiction, arguing that it did not transact business in Kentucky for

purposes of KRS § 454.210(2)(a)(1).   In the alternative, Hirschbach contends that its

Kentucky activities did not give rise to the underlying negligence claim.  The Court has

jurisdiction over this removed action pursuant to 28 U.S.C. §§ 1332 and 1441.

I.      Factual and Procedural Background

        a.      The Parties

        Hirschbach is a trucking company incorporated in Iowa and having its principal place

of business in Illinois.  (Doc. # 27 at 2).  Defendant Anthony Wilson ("Wilson") worked as

a driver for Hirschbach, making deliveries across the country in a commercial semi-truck.

(*Id.*)  Although currently a resident of Ohio, Wilson lived in Kentucky when the accident in

question took place.  (*Id.* at 2, 7).

Plaintiff Arizona Wilson is a resident of Kentucky and the administrator of the estate of Leo Michael Cox ("Cox").  (*Id.* at 2).  Cox died as a result of being run over by Wilson's semi-truck on August 10, 2013.  (*Id.* at 4-5).  The accident occurred in Walcott, Iowa, and the truck was being operated by Wilson, who at the time was completing a delivery for Hirschbach.  (*Id.*)  Cox and Wilson were related as cousins.  (*Id.* at 2).

### *b.*    *The Accident*

In July 2013, Wilson asked Cox to accompany him on a delivery from Cresco, Iowa to Gastonia, North Carolina.  (Doc. # 27 at 3).  The trip would last approximately five (5) months and would not involve any deliveries to Kentucky.  (*Id.*; Doc. # 24-2 at 1).  Cox agreed and Wilson contacted Hirschbach to obtain the necessary paperwork.  (*Id.*)  Hirschbach sent a "Passenger Authorization Form" to Wilson in Kentucky, where he lived at the time.  (*Id.*)  The form provided insurance coverage for Cox and arranged for Wilson to pay for such coverage.  (Doc. # 27-1).  It also required Cox to release Hirschbach from any liability for death, injury or property damage that might occur as a result of the trip.  (*Id.*)  Both men completed the Passenger Authorization Form and Wilson returned it to Hirschbach via fax on July 24, 2013.  (*Id.*)

On the night of August 9, 2013, Wilson and Cox arrived at a truck stop in Walcott, Iowa.  (Doc. # 27 at 4).  After Wilson parked the truck, both men entered a nearby building and spent approximately one hour there before returning to the truck. (Doc. # 27 at 4).  Cox became bored and eventually went back to the building.  (*Id.*)  Sometime later, Wilson noticed the vehicle parked in front of him turn on its lights and drive away.  (*Id.*)  Wilson then started his truck and began to move forward into the vacant parking space.  (*Id.* at

2

4-5). Unfortunately, Cox had returned from the building and was sitting between the cab and the trailer of Wilson's truck. (*Id.*)  The truck rolled forward onto Cox, who died as a result. (*Id.* at 5).

On April 1, 2014, Plaintiff sued Hirschbach and Wilson for negligence in the Knox Circuit Court, Knox County, Kentucky.  (Doc. # 1-1).  On June 13, 2014, Hirschbach removed the case to this Court pursuant to 28 U.S.C. §§ 1332 and 1441.  (Doc. # 1 at 3). Plaintiff filed a motion to remand for lack of subject matter jurisdiction, but that motion was denied.[1]  (Doc. # 17).  The instant Motion to Dismiss for lack of personal jurisdiction followed.  (Doc. # 24).

## II.   Analysis

### a.   Standard of Review

In considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2), the burden of demonstrating personal jurisdiction always rests with the plaintiff. *Serras v. First Tenn. Bank Nat'l Assn.*, 875 F.2d 1212, 1214 (6th Cir. 1989).  When, as here, the court chooses to rule without conducting an evidentiary hearing, the plaintiff need only make a prima facie showing of personal jurisdiction.  *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir. 2002).  However, the plaintiff may not rely solely on his pleadings, "but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction."  *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991).  The court will view the pleadings and affidavits "in a light most favorable to the plaintiff," and will not "weigh the controverting assertions of the party seeking dismissal."

---

[1] The Court held that complete diversity existed because defendant Anthony Wilson had changed his domicile to Ohio before the case was removed.  (Doc. # 17).

3

*Id.* at 1459.  The purpose of this standard is "to prevent nonresident defendants from regularly avoiding personal jurisdiction simply by filing an affidavit denying all jurisdictional facts."  *Id.*  Thus, dismissal is only proper if "the specific facts [alleged by the plaintiff] collectively fail to state a prima face case for jurisdiction."  *Id.*

### b.    *Long-arm Jurisdiction in Kentucky.*

"A federal court sitting in diversity may exercise personal jurisdiction over an out-of-state defendant only to the extent that a court of the forum state could do so."  *Kerry Steel, Inc. v. Paragon Indus., Inc.*, 106 F.3d 147, 148 (6th Cir. 1997).  In Kentucky, the issue of long-arm jurisdiction is governed by a two-step process.

> First, review must proceed under KRS 454.210 to determine if the cause of action arises from conduct or activity of the defendant that fits into one of the statute's enumerated categories. If not, then *in personam jurisdiction* may not be exercised. When that initial step results in a determination that the statute is applicable, a second step of analysis must be taken to determine if exercising personal jurisdiction over the non-resident defendant offends his federal due process rights.

*Caesars Riverboat Casino, LLC v. Beach*, 336 S.W.3d 51, 57 (Ky. 2011).[2]

Step one – the contested issue in this case – is a matter of satisfying Kentucky's long-arm statute.  KRS § 454.210(2)(a) contains nine subsections, each describing a generic scenario upon which personal jurisdiction may be predicated.  The statute also provides that "[w]hen jurisdiction over a person is based solely upon this section, only a claim *arising from* acts enumerated in this section may be asserted against him."  KRS §

---

[2] Until 2011, Kentucky's long-arm statute was interpreted as reaching the outer limits of federal due process, thus collapsing the above two-step process into a single, constitutional inquiry. *Id.*  In *Caesers*, the court restored the independent significance of Kentucky's long-arm statute, declaring that it must be satisfied as an "initial step."  *Id.*  Thus, if a plaintiff is unable to satisfy KRS § 454.210, the court may not assert jurisdiction over the nonresident defendant, regardless of whether doing so would comport with federal due process.

454.210(2)(b) (emphasis added). Thus, a Kentucky court may not exercise jurisdiction "simply because [the non-resident defendant] has engaged in conduct or activity that fits within one or more subsections of KRS § 454.210(2)(a). The plaintiff must also show that his claim is one that arises from the conduct or activities described in the subsection." *Id.* at 55.

### c.     *Kentucky's long-arm statute precludes jurisdiction over Hirschbach.*[3]

Hirschbach correctly states that it is a nonresident for purposes of Kentucky's long-arm statute. (Doc. # 24-1 at 4). Hirschbach then contends that Plaintiff cannot satisfy any of the enumerated subsections of KRS § 454.210(2)(a). (*Id.* at 4-9). In the event a subsection is found applicable, Hirschbach maintains that none of its Kentucky activities gave rise to the cause of action which Plaintiff now asserts. (Doc. # 28 at 2-4).

Plaintiff responds that jurisdiction is proper under KRS § 454.210(2)(a)(1). (Doc. # 27 at 6). Subsection one states that a "court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a claim arising from the person's . . . [t]ransacting any business in this Commonwealth."[4] KRS § 454.210(2)(a)(1). According to Plaintiff, Hirschbach transacted business by sending the Passenger Authorization Form to Kentucky, which enabled Wilson to purchase an accident insurance policy, while requiring Cox to release Hirschbach from any liability resulting from the trip. (Doc. # 27 at

---

[3] Within their respective briefs, the parties occasionally frame their arguments as if the Motion to Dismiss applies to both Hirschbach and Wilson. However, the Motion is styled as a "Motion to Dismiss by Defendant Hirschbach Motor Lines, Inc.," and it was filed solely by Hirschbach's attorney, Michael E. Hammond, who then certified that he sent a copy to Wilson's counsel. (Doc. # 24-1 at 1). Accordingly, this Memorandum Opinion and Order only addresses whether the Court can properly exercise jurisdiction over Hirschbach.

[4] KRS § 454.210(1) states that the term "person" includes any "corporation . . . who is a nonresident of this Commonwealth."

6-7).  Plaintiff contends that these business activities gave rise to the underlying negligence claim because Hirschbach "reasonably believed an accident was possible" and attempted to insulate itself with the Passenger Authorization Form.  (*Id.*)

       1.       *Hirschbach transacted business in Kentucky*.

Kentucky case law provides little guidance regarding the applicability of KRS 454.210(2)(a)(1).  Hirschbach asks the Court to follow *Tube Turns Div. of Chemetron Corp. v. Patterson Co.*, 562 S.W.2d 99 (Ky. Ct. App. 1978).  (Doc. # 28 at 4-5).  In that case, an out-of-state corporation sent mail and made telephone calls to Kentucky during the course of negotiating a contract.  *Patterson*, 562 S.W.2d at 99-100.  The court held that such activities did not qualify as transacting business, noting that the corporation had no employees in Kentucky and did not keep an office there.  *Id.*  Although, factually speaking, *Patterson* bears some resemblance to the case at hand, it was decided well before *Caesars*, and as such the court relied solely on constitutional standards in addressing Kentucky's long-arm statute.  *Id.*  Because the issue of due process is reserved for step two of the analysis, at this point, Hirschbach's reliance on *Patterson* is misplaced.[5]

A plaintiff's burden is simply to make a *prima facie* showing that the nonresident defendant "transacted business" in Kentucky.  *See Neogen Corp.,* 282 F.3d at 887.  Here, it is undisputed that Hirschbach sent the Passenger Authorization Form to Kentucky for Wilson and Cox to complete.  (Doc. # 27 at 3).  As a result, Wilson elected to purchase a passenger insurance policy, naming Cox as his beneficiary, and Cox chose to release

---

[5] And because the Court has found that Plaintiff's claim did not arise from Hirschbach's Kentucky activities, *see infra*, it will be unnecessary in this case to address the issue of due process.

Hirschbach from any liability resulting from the trip.  (Doc. # 27-1 at 1).  The form was returned to Hirschbach and approved by Terry Leahy, Vice President of Administration and Safety.  (*Id.*)  Viewing these facts in a light most favorable to Plaintiff, the Court concludes that Hirschbach did transact business under KRS 454.210(2)(a)(1) by virtue of the Passenger Authorization Form.  Therefore, the Court will now consider whether such conduct gave rise to the underlying claim of negligence.

2.   <u>*Plaintiff's claim did not arise from Hirschbach's Kentucky activities*</u>.

The requirement that a plaintiff's claim *arise from* the proffered statutory predicate was discussed at length in *Caesers*.  336 S.W.3d at 58-59.  There, a Kentucky resident sued a casino for negligence after slipping on spilled butter at the casino's Indiana gambling boat.  *Id.* at 53.  The plaintiff filed suit in a Kentucky state court, alleging that jurisdiction over the out-of-state casino was proper because its marketing efforts in Kentucky qualified as business activities under KRS § 454.210(2)(a)(1).  *Id.* at 58.  The plaintiff also averred that such conduct gave rise to her claim of negligence, noting that "but for" the casino's Kentucky advertisements, she would never have been on the gambling boat.  *Id.*  The trial court dismissed the case for lack of personal jurisdiction, but was reversed on appeal, and the Kentucky Supreme Court granted the casino's motion for discretionary review.  *Id.* at 52-53

In assessing the applicability of Kentucky's long-arm statute, the court found that the casino had certainly transacted business for purposes of KRS § 454.210(2)(a)(1), and thus proceeded to address whether those activities gave rise to the plaintiff's cause of action. *Id.* at 58.  Assigning the statutory language its common and ordinary meaning, the court offered the following explanation with respect to the phrase "arising from":

7

> [T]he wrongful acts of the defendant alleged in the plaintiff's complaint must originate from the actions or activities that form the applicable statutory predicate for assertion of long-arm jurisdiction. Conversely, the statutory foundation for the assertion of long-arm jurisdiction must be the source of the plaintiff's cause of action. If there is a reasonable and direct nexus between the wrongful acts alleged in the complaint and the statutory predicate for long-arm-jurisdiction, then jurisdiction is properly exercised.

*Id.* at 58-59.

The court explained that "[w]hether such a connection exists will often be self-evident, especially when the claim is based upon tortious injury that occurs in this state or upon contracts to supply goods in this state." *Id.* at 59. However, due to the limitless factual scenarios that might occur, "no general rule can be expressed . . . and the analysis must necessarily be undertaken on a case by case basis." *Id.* Trial courts should apply a "common sense approach," and when in doubt, decide in favor of exercising jurisdiction. *Id.*

Applying the ground rules above, the court rejected the plaintiff's "but for" reasoning, noting that it would "stretch[ ] the phrase 'arising from' beyond reasonable bounds." *Id.* at 58. The source of the plaintiff's injury was, after all, "the butter negligently left on the floor." *Id.* at 59. The mere fact that the casino's marketing activities contributed to her presence on the gambling boat was "far too attenuated to fit within the definition of 'arising from.'" *Id.* Accordingly, the court declared that "there is no reasonable and direct nexus between [the casino's] marketing activities [in Kentucky] . . . and the negligent acts or omissions in Indiana that produced [the plaintiff's] fall." *Id.* Having found that the plaintiff's claim did not arise from any of the enumerated subsections in KRS § 454.210(2)(a), the court concluded that personal jurisdiction in Kentucky was not proper, and therefore reinstated the trial court's dismissal decision without engaging the federal due process inquiry. *Id.*

8

Here, Plaintiff argues that because the Passenger Authorization Form arranged for insurance to be purchased, and contained a release of liability clause, Hirschbach must have anticipated the possibility of an accident. (Doc. # 27 at 6-7). While the Court accepts this inference as true, it does not follow that the Passenger Authorization Form gave rise to the allegedly wrongful conduct. Much like the casino's marketing efforts in *Caesars*, the form merely contributed to Cox's presence at the truck stop on August 10, 2013. It had nothing to do with Wilson's allegedly negligent driving, and, at best, provides a "but for" argument that Hirschbach's Kentucky activities were the source of Plaintiff's claim. As discussed above, the Kentucky Supreme Court has held that such attenuated circumstances do not establish a direct and reasonable nexus. Accordingly, the Court concludes that Cox's injury did not arise from Hirschbach's conduct in Kentucky.

A common sense approach yields the same result. Cox was not killed simply because he accompanied Wilson on a delivery for Hirschbach. As the complaint makes clear, Cox's death was the result of Wilson's "negligent, careless and reckless operation of his vehicle." (Doc. # 1-1 at 2). Although the Passenger Authorization Form might have enabled Cox to go on the trip in the first place, it had absolutely no effect on the manner in which Wilson operated the semi-truck. Again, the Court must conclude that Plaintiff's claim did not arise from Hirschbach's Kentucky activities.[6]

---

[6] Plaintiff also briefly notes that Hirschbach has admitted to supplying goods in Kentucky during other deliveries, which are unrelated to this case. (Doc. # 27 at 6). As it pertains to any subsection of KRS § 454.210(2)(a), this observation is completely irrelevant. Even if Hirschbach has supplied goods to Kentucky on other occasions, Cox was not present for those trips and accordingly his death could not have arisen from those activities.

### III.      Conclusion

Dismissal of Plaintiff's claim against Hirschbach is proper because personal jurisdiction cannot be exercised under Kentucky's long-arm statute.  Pursuant to *Caesars*, the Court need not address the issue of federal due process.

Accordingly, for the reasons stated herein,

**IT IS ORDERED** as follows:

(1)      Defendant Hirschbach's Motion to Dismiss (Doc. # 24) be, and is hereby **GRANTED**; and

(2)      All claims against Defendant Hirschbach are **DISMISSED WITHOUT PREJUDICE**.

This 9th day of April, 2015.



Signed By:
*David L. Bunning*
United States District Judge

G:\DATA\Opinions\London\14-139 MOO granting DE 24.wpd